UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

WADE ALAN KNIGHT,

                              Plaintiff,

        v.

CITY OF ELKO, *et al.*,

                              Defendants.

Case No. 3:22-cv-00384-MMD-CSD

ORDER

## I.      SUMMARY

*Pro se* Plaintiff Wade Alan Knight brings this action under 42 U.S.C. § 1983 against Defendants Officers Andrew Cunningham and Bartolo Ortiz for alleged wrongful arrest and Sergeant Melanie Edgmond for alleged wrongful booking in violation of his Fourth Amendment rights. (ECF Nos. 11, 18.) Before the Court is Defendants' motion for summary judgment (ECF No. 56 ("Motion")).[1] As explained below, because the Court finds no genuine disputes of material fact and no Fourth Amendment violation, the Court grants Defendants' Motion.[2]

## II.     BACKGROUND[3]

After screening, the Court allowed Knight to proceed with his Fourth Amendment claims against Cunningham, Ortiz, and Edgmond. (ECF No. 18.) During the relevant time

---

[1]Knight responded (ECF No. 63), and Defendants replied (ECF No. 66).

[2]The Court also denies Knight's pending motion for status check (ECF No. 71) as moot because the granting of Defendants' Motion closes this case and because the documents that Knight requests in the motion for status check consist of the notice of change of address he himself filed (ECF No. 69) and a court order (ECF No. 68) notifying Knight of his deadline to oppose Defendants' motion to dismiss for failure to provide current address (ECF No. 67), which the Court had already denied with no need for a response from Knight (ECF No. 72).

[3]The following facts are undisputed unless otherwise noted. The Court only describes facts that are pertinent to its discussion of the Motion.

period, Cunningham and Ortiz were law enforcement officers with the Elko City Police Department, and Edgmond was a sergeant with the Elko County Sheriff's Office.

On March 10, 2022, responding to two separate calls for welfare checks, Cunningham pulled over two individuals walking down a sidewalk. (ECF No. 56-3 at 2-3 (Cunningham's declaration); ECF No. 63 at 2 (Knight's response brief).) One of them Cunningham assumed to be the subject of the calls, and the other was Knight, whom Cunningham recognized but at the time could not remember his name. (ECF No. 56-3 at 3.) After making inquiries of the individual who was the subject of the welfare check calls, Cunningham asked Knight for his name and to provide him with identification. (ECF No. 56-3 at 3; ECF No. 63 at 2.) Knight declined to share his name or provide identification. (ECF No. 56-3 at 3; ECF No. 63 at 2.) Cunningham then left and drove away. (ECF No. 56-3 at 3; ECF No. 63 at 2.)

Shortly after, Cunningham remembered Knight's name. (ECF No. 56-3 at 3.) Cunningham knew Knight as a "habitual criminal" that he had previously encountered multiple times. (*Id.*) Cunningham ran a warrant check using his in-car computer and noticed that there was an outstanding arrest warrant for Knight. (*Id.*) The misdemeanor bench warrant had been issued on February 28, 2022 by a court in Lander County. (ECF No. 56-6.)

Cunningham then pulled up for a second time on the two individuals, including Knight. (ECF No. 56-3 at 3; ECF No. 63 at 2.) Ortiz arrived on the scene shortly thereafter. (ECF No. 56-3 at 3; ECF No. 63 at 2-3.) Cunningham and Ortiz detained Knight in handcuffs based on the warrant, pending confirmation of the warrant by dispatch. (ECF No. 56-3 at 3; ECF No. 63 at 3.) Dispatch eventually confirmed the existence of the outstanding arrest warrant to the officers, and Knight was transported to Elko County Jail. (ECF No. 56-3 at 4; ECF No. 63 at 3.)[4] Once there, Edgmond booked and processed Knight into custody. (ECF No. 63 at 9.)

---

[4]Cunningham's body camera footage (ECF Nos. 56-4, 57 (manually filed with the Court)) corroborates the sequence of events from when Cunningham pulled up on Knight for the second time to when Knight was transported to Elko County Jail.

1

**III.    DISCUSSION**

2       A plaintiff may bring a claim for false arrest or false imprisonment under § 1983 by

3   alleging a violation of their Fourth Amendment right to be free from unreasonable seizure

4   of their person. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 923-25

5   (9th Cir. 2001). "A claim for unlawful arrest is cognizable under § 1983 as a violation of

6   the Fourth Amendment, provided the arrest was made without probable cause or other

7   justification." *Dubner v. City & Cnty. of San Francisco*, 266 F.3d 959, 965 (9th Cir. 2001)

8   (citation omitted). The Court first addresses the claim against Cunningham and Ortiz, then

9   the claim against Edgmond. Because the parties do not appear to dispute any material

10  facts but simply argue about what those facts demonstrate under the law, summary

11  judgment is appropriate here. *See Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d

12  1468, 1471 (9th Cir. 1994) ("The purpose of summary judgment is to avoid unnecessary

13  trials when there is no dispute as to the facts before the court.").

14      **A.    Cunningham and Ortiz**

15      The Court analyzes the sequence of events involving Knight's encounters with

16  Cunningham and Ortiz in chronological order to determine whether there was any Fourth

17  Amendment violation.

18              **1.    Initial Encounter**

19      As to the initial encounter, Knight appears to argue that Cunningham lacked

20  reasonable suspicion or probable cause to stop him and ask him for his identity. (ECF

21  No. 63 at 5.) To the extent Knight is arguing that the first encounter with Cunningham

22  constituted a stop or seizure, the Court disagrees. "[A] seizure does not occur simply

23  because a police officer approaches an individual and asks a few questions." *Fla. v.*

24  *Bostick*, 501 U.S. 429, 434 (1991). "[T]he appropriate inquiry is whether a reasonable

25  person would feel free to decline the officers' requests or otherwise terminate the

26  encounter." *Id.* at 436. "So long as a reasonable person would feel free 'to disregard the

27  police and go about his business,' . . . no reasonable suspicion is required." *Id.* at 434

28  (internal citation omitted). "[E]ven when officers have no basis for suspecting a particular

1  individual, they may generally ask questions of that individual [and] ask to examine the

2  individual's identification . . . as long as the police do not convey a message that

3  compliance with their requests is required." *Id.* at 434-35 (internal citations omitted).

4        First, the initial encounter with Knight and his acquaintance was generally justified

5  because Cunningham had received two calls for welfare checks regarding Knight's

6  acquaintance who had purportedly been seen vomiting at a crosswalk and banging his

7  head on the concrete ground. (ECF No. 56-3 at 2-3, 7, 10.) It was therefore reasonable

8  for Cunningham to approach the acquaintance and Knight—who happened to be there

9  when Cunningham arrived—and to ask them questions and for identification to assess

10  the situation. *See Bostick*, 501 U.S. at 434-35. Second, as far as Knight was concerned,

11  the encounter did not constitute a "seizure" under the Fourth Amendment because he

12  was evidently not the subject of the calls and a reasonable person in that situation would

13  feel free to "disregard the police and go about his business." *See id.* at 434. In fact, Knight

14  apparently felt free to decline and indeed declined Cunningham's request for his name

15  and identification, and Cunningham accepted the response and did not require

16  compliance. *See id.* at 434-36*; United States v. Ingram*, 151 F. App'x 597, 599 (9th Cir.

17  2005) ("The appropriate inquiry is whether a reasonable person in [their] position would

18  feel free to ignore the officer's order."). Accordingly, the Court finds that Cunningham's

19  initial encounter with Knight was reasonable, did not constitute a stop or seizure requiring

20  reasonable suspicion or probable cause, and therefore did not violate the Fourth

21  Amendment.[5]

22

23

24

25

---

26      [5]To the extent Knight takes issue with the fact that Cunningham would not have

27  eventually discovered the arrest warrant had he not initially encountered Knight that day, while that may be true, there is ultimately no Fourth Amendment violation that led to Cunningham recognizing Knight during this encounter and later remembering his name.

28  Cunningham did not even learn of Knight's identity through the initial encounter itself but from his memory of past encounters with Knight.

1

2.      **Warrant Check**

2        Knight's main argument appears to be that Cunningham did not have probable

3    cause or reasonable suspicion to run his name for a warrant check.[6] (ECF No. 63 at 3-

4    5.) Defendants counter that the Fourth Amendment did not require Cunningham and Ortiz

5    to demonstrate probable cause or reasonable suspicion to search for outstanding

6    warrants. (ECF No. 56 at 6.) As explained below, the Court does not agree with

7    Defendants to the extent they contend law enforcement officers never need reasonable

8    suspicion to run a warrant check but ultimately finds that the warrant check here did not

9    constitute a search or seizure requiring justification under the Fourth Amendment.

10        Defendants primarily rely on *Utah v. Strieff*, 579 U.S. 232 (2016), to argue that the

11    discovery of the valid arrest warrant "attenuat[ed] any hypothetical illegality of the initial

12    stop" or warrant check. (ECF No. 56 at 7.) *Strieff* does not squarely apply here because

13    it concerns the attenuation doctrine, which goes toward whether evidence is admissible

14    despite unconstitutional police conduct.[7] Here, the Court is concerned only with whether

15    there was any unconstitutional conduct, not with whether such conduct was sufficiently

16    attenuated to warrant not suppressing any evidence obtained. In § 1983 cases, "police

17    officers cannot retroactively justify a suspicionless search and arrest on the basis of an

18    after-the-fact discovery of an arrest warrant." *Moreno v. Baca*, 431 F.3d 633, 641 (9th Cir.

19    2005).

20        Fourth Amendment cases involving warrant checks typically involve a warrant

21    check conducted during a stop or seizure. For instance, courts have required at least

22    reasonable suspicion to detain someone for the purpose of running a warrant check, *see*

23

24        [6]Knight also argues that he did not consent to having his name run through the
25    criminal history database. (ECF No. 63 at 3, 4.) The Court rejects that argument because
      the Fourth Amendment does not require that officers obtain an individual's consent to run
26    a warrant check.

27        [7]Under the attenuation doctrine, "[e]vidence is admissible when the connection
      between unconstitutional police conduct and the evidence is remote or has been
28    interrupted by some intervening circumstance, so that 'the interest protected by the
      constitutional guarantee that has been violated would not be served by suppression of
      the evidence obtained.'" *Strieff*, 579 U.S. at 238 (citation omitted).

1    *United States v. Luckett*, 484 F.2d 89, 91 (9th Cir. 1973) (finding that continued detention

2    "for the purpose of running a warrant check" to be unreasonable because the police "had

3    no reasonable grounds to be suspicious that there might be a warrant outstanding against

4    him"), and found that warrant checks performed incident to a traffic violation stop are

5    justified by officer safety concerns or the reasonable suspicion tied to the traffic violation,

6    *see United States v. Hylton*, 30 F.4th 842, 848 (9th Cir. 2022), *cert. denied,* 143 S. Ct.

7    393 (2022). In other words, a warrant check performed during a stop or seizure must be

8    justified on some reasonable grounds.

9         Here, the warrant check was not conducted during a stop or seizure of Knight. That

10   is, Cunningham conducted the warrant check in his car after he had driven away from

11   Knight after the initial encounter. (ECF No. 56-3 at 3.) The Fourth Amendment only

12   applies to searches and seizures, and the Court is not persuaded that a warrant check in

13   and of itself constitutes a search or seizure within the meaning of the Fourth Amendment.

14   *See United States v. Jacobsen*, 466 U.S. 109, 113 (1984) ("[T]he Fourth Amendment

15   provides that the 'right of the people to be secure in their persons, houses, papers and

16   effects, against unreasonable searches and seizures, shall not be violated.'").

17        "A 'search' occurs when an expectation of privacy that society is prepared to

18   consider reasonable is infringed." *Id.* (citations omitted). "A 'seizure' of property occurs

19   when there is some meaningful interference with an individual's possessory interests in

20   that property," *id.* (citations omitted), and a "seizure" of a person occurs when "police

21   conduct would have communicated to a reasonable person that the person was not free

22   to decline the officers' requests or otherwise terminate the encounter," *Bostick*, 501 U.S.

23   at 439. Knight had no reasonable expectation of privacy in the information that he had an

24   outstanding arrest warrant contained in the criminal history database, which exists

25   primarily for law enforcement use and access as part of their operations. Nor could the

26   warrant check itself constitute a seizure of property or person. Accordingly, Cunningham's

27

28

running of the warrant check, which was not conducted during a stop or seizure and did not itself constitute a search or seizure, did not violate the Fourth Amendment.[8]

### 3.    Second Encounter and Arrest

Because Knight does not dispute or challenge the validity of the February 28, 2022 arrest warrant (ECF No. 63 at 17; ECF No. 56-1 at 11), the Court finds that Cunningham and Ortiz's stop, arrest, and detainment of Knight during the second encounter based on the warrant did not violate the Fourth Amendment. "[T]he facts upon which the reasonableness of a search or seizure depends, whether it be an outstanding arrest warrant . . . or any other fact, must be known to the officer at the time the search or seizure is conducted." *Moreno*, 431 F.3d at 642. "A person arrested under a warrant would have received a prior judicial determination of probable cause." *Gerstein v. Pugh*, 420 U.S. 103, 116 n.18 (1975).

Here, before and at the time of the arrest, Cunningham knew of Knight's identity, and Cunningham and Ortiz knew of the outstanding arrest warrant for Knight. The warrant supplied the probable cause for the officers to stop, arrest, detain, and perform a search incident to the arrest[9] on Knight. Accordingly, Knight's arrest did not violate the Fourth Amendment.[10]

To the extent Knight argues that Cunningham and Ortiz's conduct from the warrant check to the arrest violated certain Nevada statutes, national and state law enforcement

---

[8]As the reasonable suspicion standard cannot apply where there is no Fourth Amendment search or seizure, the Court therefore need not—and does not—address the parties' arguments about whether Cunningham had reasonable suspicion to run the warrant check.

[9]"The search-incident-to-arrest exception permits law enforcement officers to conduct a warrantless search of a person who is arrested, and of his surrounding area, when the search is incident to the arrest." *United States v. Smith*, 389 F.3d 944, 950-51 (9th Cir. 2004) (citation omitted).

[10]To the extent Knight argues that, during this second encounter, the officers did not have the emergency lights on their cars activated and therefore did not have legal authority over him (ECF No. 63 at 8, 19), Knight does not support this contention with any case law, and the Court is not persuaded that this changes the Fourth Amendment analysis.

agency standards, and Elko Police Department internal policies (ECF No. 63 at 3-4, 14, 20-21), the Court rejects the argument because under § 1983, the only type of claim proceeding here, the issue is whether a government official violated the Constitution or federal law, not whether they violated state laws, agency standards, or police department policies.[11] Officials should of course conform their conduct to applicable statutes and policies, but conduct by a government official that violates some state statutory provision or law enforcement policy does not necessarily violate the Fourth Amendment. *See Rios v. City of Los Angeles*, Case No. 2:21-cv-05341-RGK-MAA, 2022 WL 17219085, at *2 (C.D. Cal. July 26, 2022) ("[W]hether an officer followed regulations or state law is 'immaterial as to the question of whether a violation of the federal constitution has been established.'"); *Davis v. Scherer*, 468 U.S. 183, 194 (1984) ("Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some [state] statutory or administrative provision."). Even if Cunningham and Ortiz violated any of the provisions Knight identified, as the Court found above, their conduct ultimately did not violate the Fourth Amendment.

## B.    Edgmond

Knight argues that Edgmond booked him into jail illegally because the arresting officers did not have reasonable suspicion or probable cause to arrest him. (ECF No. 63 at 18.) As discussed above, the Court finds that Cunningham and Ortiz had probable cause to arrest Knight based on the valid arrest warrant. Accordingly, Edgmond's booking of Knight into jail, which also relied on the valid arrest warrant, was lawful and did not violate the Fourth Amendment.

Knight also argues that Edgmond violated Elko County Sheriff Department policies by for instance not having a "declaration of probable cause sheet" when booking Knight. (*Id.*) The Court rejects that argument because, as discussed above, violations of internal

---

[11]"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted).

police department policies do not alone constitute violations of the Fourth Amendment, and in any event, for purposes of the Fourth Amendment, such a sheet is not necessary here where the valid warrant provided the probable cause required for Knight's arrest and booking.

In sum, the Court finds that, based on the undisputed facts of this case, Cunningham, Ortiz, and Edgmond did not violate Knight's Fourth Amendment rights and accordingly grants Defendants' motion for summary judgment.

**IV.   CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that Defendants' motion for summary judgment (ECF No. 56) is granted.

It is further ordered that Plaintiff's motion for status check (ECF No. 71) is denied as moot.

The Clerk of Court is directed to enter judgment accordingly and close this case.

DATED THIS 27th Day of June 2024.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE